UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

REBECCA REEVES-STANFORD,

     Plaintiff,

v.                                 Case No: 8:22-cv-1070-JSS

COMMISSIONER OF SOCIAL
SECURITY,

     Defendant.
_____/

## ORDER

     Plaintiff Rebecca Reeves-Stanford seeks judicial review of the denial of her claim for spousal benefits based on the earnings record of her husband. As the Commissioner's decision was not based on substantial evidence, the decision is remanded.

## BACKGROUND

     On June 18, 2018, Plaintiff applied for spousal insurance benefits pursuant to 42 U.S.C. § 402(b) based on the earnings record of her husband, Robert Stanford. (Tr. 146–47.) Mr. Stanford has been incarcerated in federal prison since at least 2012. (Tr. 44–45.) The Social Security Administration (SSA) initially denied Plaintiff's claim because Mr. Stanford had not yet filed his own application for benefits. (Tr. 93–94.) Plaintiff requested reconsideration of the SSA's decision. (Tr. 95–98.) On reconsideration, the SSA affirmed its decision and concluded that "[s]ince [Plaintiff's] husband is not currently entitled to either retirement or disability benefits from Social

Security, [Plaintiff is] not entitled to wife's benefits on his record." (Tr. 99–101 (citing 42 U.S.C. § 402(b); 20 C.F.R. § 404.330).) Plaintiff then requested a hearing before an Administrative Law Judge (ALJ). (Tr. 102–06.) The ALJ held a hearing on June 15, 2021, at which Plaintiff appeared and testified. (Tr. 34–56.) After the hearing, the ALJ issued a fully favorable decision dated June 22, 2021, finding Plaintiff entitled to spousal benefits on the record of her husband. (Tr. 25–33.) The ALJ acknowledged that "Social Security policy is that a current spouse cannot receive benefits on the account of her wage earner husband unless and until the husband files for Title II benefits on his own account" but found that the "wage earner/prisoner had applied for Title II retirement insurance benefits and [Plaintiff] is entitled to Title II spouse's benefits on the record of the wage earner/prisoner[.]" (Tr. 30.)

Following the ALJ's decision, an SSA Assistant Regional Commissioner sent a memorandum to the SSA Appeals Council arguing that the ALJ's decision "is not supported by the requirements of the [Social Security] Act" and Plaintiff is not entitled to benefits because "the wage earner has not filed for Title II benefits on his own account." (Tr. 131.) The Memorandum noted that "prior online applications were attempted" on behalf of Mr. Stanford, but "were identified as possible anomalous filings" and the SSA "was unable to verify that the wage earner had indeed filed the applications." (Tr. 131–32.) The applications were therefore "abated with no decision made[.]" (Tr. 132.)

The Appeals Council then reviewed the ALJ's decision sua sponte and permitted Plaintiff to submit additional argument and evidence in support of her claim,

which she did.  (Tr. 135–38.)  On March 9, 2022, the Appeals Council reversed the ALJ's decision and issued an unfavorable decision finding that Plaintiff was not entitled to spousal benefits pursuant to 42 U.S.C. § 402(b).  (Tr. 1–8.)  On review of the record, the Appeals Council found that Mr. Stanford had "started online applications for retirement insurance benefits on his own record; however the Social Security Administration has not determined that he filed a valid application, nor has it awarded him entitlement to retirement insurance benefits on his own record."  (Tr. 6.)  Accordingly, the Appeals Council concluded that Plaintiff was "not entitled to spouse's insurance benefits on the record of the wage earner" because Mr. Stanford had not filed a valid application and was therefore not entitled to benefits on his own record.  (Tr. 6.)

Plaintiff timely filed a complaint with this court seeking judicial review of the Appeals Council's decision. (Dkt. 1.)  The case is now ripe for review under 42 U.S.C. § 405(g).  Before the court are Plaintiff's brief in opposition to the Commissioner's decision (Dkt. 20), Defendant's brief in support of the Commissioner's decision (Dkt. 23), and Plaintiff's reply brief (Dkt. 24).

## APPLICABLE STANDARDS

An individual may obtain judicial review of any final decision of the Commissioner of Social Security through a civil action brought in a district court of the United States.  42 U.S.C. § 405(g).  On review, the court must uphold a determination by the Commissioner that a claimant is not entitled to benefits if it is supported by substantial evidence and comports with applicable legal standards. *See*

*id.* "[I]n cases where the Appeals Council reverses an ALJ's decision on its own motion, judicial review is limited to determining whether the Appeals Council's decision is supported by substantial evidence." *Parker v. Bowen*, 788 F.2d 1512, 1519–20 (11th Cir. 1986). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938)); *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996).

In reviewing the Commissioner's decision, the court may not decide the facts anew, re-weigh the evidence, or substitute its own judgment for that of the ALJ or Appeals Council, even if it finds that the evidence preponderates against the Commissioner's decision. *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). The Commissioner's failure to apply the correct law, or to give the reviewing court sufficient reasoning for determining that he or she has conducted the proper legal analysis, mandates reversal. *Keeton v. Dep't of Health & Hum. Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994). The scope of review is thus limited to determining whether the findings of the Commissioner are supported by substantial evidence and whether the correct legal standards were applied. 42 U.S.C. § 405(g); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002).

## ANALYSIS

Plaintiff challenges the Appeals Council's decision and argues that remand is warranted for two reasons. (Dkt. 20.) First, Plaintiff argues that the Appeals Council

erred in interpreting the relevant statute and regulation to require that Mr. Stanford must have filed a valid application for benefits before Plaintiff would be entitled to spousal benefits. (*Id.* at 10–13.) Second, Plaintiff argues that the Appeals Council's finding that Mr. Stanford had not applied for benefits is not supported by substantial evidence. (*Id.* at 14–16.) For the reasons that follow, Plaintiff's second contention warrants reversal.

### A. SSA Interpretation of 42 U.S.C. § 402(x)(2) and 20 C.F.R. § 404.468(a)

When an administrative agency, such as the SSA, interprets a statute or regulation that it administers, a court reviews the agency's interpretation de novo, although potentially with some level of deference to the agency's interpretation. *Martin v. Soc. Sec. Admin.*, 903 F.3d 1154, 1159 (11th Cir. 2018) (citing *Arevalo v. U.S. Att'y Gen.*, 872 F.3d 1184, 1187 (11th Cir. 2017)); *see Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837 (1984). The proper level of deference to be given to an agency's interpretation is determined by the "circumstances of each case, including the presence of congressionally delegated agency authority, the form of the agency action and, for those situations not clearly meriting *Chevron* deference, the factors laid out in *Skidmore v. Swift & Co.*, 323 U.S. 134, 140 [] (1944)." *Stroup v. Barnhart*, 327 F.3d 1258, 1261 (11th Cir. 2003) (citing *United States v. Mead Corp.*, 533 U.S. 218, 227–35 (2001)).

Under any standard of deference however, the court's analysis must begin with the text of the statute or regulation to determine whether the language "has a plain and unambiguous meaning." *Martin*, 903 F.3d at 1163 (quoting *United States v. Williams*,

790 F.3d 1240, 1245 (11th Cir. 2015)); *see also Dobson v. Sec'y of Health & Hum. Servs.*, No. 20-11996, 2022 WL 424813, at *6 (11th Cir. Feb. 11, 2022) ("When we review an agency's construction of a statute it administers, the first step always requires us to ascertain whether the meaning of the provision is 'genuinely ambiguous' on the question at issue.") (citing *Kisor v. Wilkie*, 139 S. Ct. 2400, 2414 (2019)). If the text is "plain and unambiguous, there is no need for further inquiry." *Sec. & Exch. Comm'n v. Levin*, 849 F.3d 995, 1003 (11th Cir. 2017) (quoting *CBS Broad. Inc. v. Echostar Commc'ns Corp.*, 532 F.3d 1294, 1300–01 (11th Cir. 2008)). The court must give effect to the text's plain and unambiguous meaning and no deference is given to the agency's interpretation. *Arevalo*, 872 F.3d at 1188 (citing *Carcieri v. Salazar*, 555 U.S. 379, 387 (2009)); *see also Nat'l Coal Ass'n v. Chater*, 81 F.3d 1077, 1081–82 (11th Cir. 1996) (citing *Griffin v. Oceanic Contractors, Inc.*, 458 U.S. 564, 570 (1982)). The court's first step is thus "to determine whether the statutory language has a plain and unambiguous meaning by referring to the language itself, the specific context in which that language is used, and the broader context of the statute as a whole." *Levin*, 849 F.3d at 1003 (quoting *Bautista v. Star Cruises*, 396 F.3d 1289, 1295 (11th Cir. 2005)); *see also Smith v. Berryhill*, 139 S. Ct. 1765, 1774 (2019) ("We begin with the text.").

If the text is silent or ambiguous on the issue, the court may defer to the agency's interpretation of the text pursuant to the standards set by the Supreme Court. *Martin*, 903 F.3d at 1159. In certain circumstances, the agency's interpretation will warrant heightened deference pursuant to the Supreme Court's decision in *Chevron*, under

which the court "must defer to an agency's reasonable interpretation of an ambiguous statute." *Id.* *Chevron* deference may be appropriate where an agency interprets a statute or regulation through its formal administrative adjudication of individual claims. *Mead Corp.*, 533 U.S. at 230 ("the overwhelming number of our cases applying *Chevron* deference have reviewed the fruits of notice-and-comment rulemaking or formal adjudication"); *Mazariego v. Off. of U.S. Att'y Gen.*, 241 F.3d 1320, 1327 n.4 (11th Cir. 2001) ("*Chevron* deference may be applied to agency interpretations arrived at through formal adjudication.") (citing *Gonzalez v. Reno*, 212 F.3d 1338, 1348–49 (11th Cir. 2000)). Under *Chevron*, the court will defer to an agency's interpretation that is based "on a permissible construction of the statute." *Sierra Club v. Johnson*, 436 F.3d 1269, 1274 (11th Cir. 2006) (citing *Chevron*, 467 U.S. at 843); *Arevalo*, 872 F.3d at 1187–88 (quoting *Chevron*, 467 U.S. at 842–43); *see also Lewis v. Barnhart*, 285 F.3d 1329, 1333 (11th Cir. 2002).

The court applies a similar analysis to an agency's interpretation of a regulation that it administers, and "[w]hen a regulation is ambiguous, the agency's interpretation of its own regulation is entitled to deference." *Sec'y, U.S. Dep't of Lab. v. Action Elec. Co.*, 868 F.3d 1324, 1329 (11th Cir. 2017), (citing *Christensen v. Harris Cnty.*, 529 U.S. 576, 588 (2000)); *see Auer v. Robbins*, 519 U.S. 452, 461 (1997). Under *Auer*, an agency's interpretation of its own ambiguous regulation is "controlling unless plainly erroneous or inconsistent with the regulation." *Auer*, 519 U.S. at 461; *Barnhart v. Walton*, 535 U.S. 212, 217 (2002) ("Courts grant an agency's interpretation of its own regulations

considerable legal leeway.").  An agency's interpretation of an ambiguous regulation must be upheld "so long as it is reasonable, that is, so long as the interpretation sensibly conforms to the purpose and wording of the regulations." *Sierra Club*, 436 F.3d at 1274 (quoting *Legal Env't Assistance Found., Inc. v. U.S. E.P.A.*, 276 F.3d 1253, 1262 (11th Cir. 2001)); *Action Elec. Co.*, 868 F.3d at 1331 ("When the Secretary offers interpretations [] during the administrative adjudication process . . . the Secretary's interpretations of its own regulations constitute 'agency action' and 'an exercise of the agency's delegated lawmaking powers' under the Act.") (citing *Martin v. Occupational Safety & Health Rev. Comm'n*, 499 U.S. 144, 157 (1991)).  However, courts do not give *Auer* deference to an agency's interpretation of "'a parroting regulation' that does nothing more than 'paraphrase the statutory language' that it should be implementing." *Sierra Club*, 436 F.3d at 1274 (quoting *Gonzales v. Oregon*, 546 U.S. 243, 257 (2006)).

At a minimum, a reviewing court will defer to the agency's interpretation of an ambiguous provision pursuant to Supreme Court's decision in *Skidmore*, under which the court considers the "thoroughness evident in its consideration, the validity of its reasoning, its consistency with earlier and later pronouncements, and all those facts which give it power to persuade, if lacking power to control." *Martin*, 903 F.3d at 1159; *see Stroup*, 327 F.3d at 1261.  *Skidmore* deference "recognizes an agency's specialized experience and information-seeking capacities, as well as the value of uniformity." *Martin*, 903 F.3d at 1159 (citing *Mead*, 533 U.S. at 234–35).

In adjudicating Plaintiff's claim, the Appeals Council interpreted 42 U.S.C. § 402(x)(2) and 20 C.F.R. § 404.468(a) to require Plaintiff's husband to file a valid application for old-age benefits in order for Plaintiff to be eligible for spousal benefits based on her husband's earnings record.  (Tr. 7–10.)  Plaintiff argues that the Appeals Council's interpretation was error.  (Dkt. 20 at 10–13.)  According to Plaintiff, "it would make no sense for the agency to require Robert to file his own application" as he is "clearly ineligible for retirement benefits as a federal prisoner serving a 110-year sentence."  (*Id.* at 12 (quoting *Mashi v. Immigr. & Naturalization Serv.*, 585 F.2d 1309, 1314 (5th Cir. 1978) ("The law does not require a person to do a vain and empty thing.")).)  Plaintiff argues that under the statute and regulation, the Appeals Council "was supposed to assume that Robert was currently entitled to benefits" and the Appeals Council "committed an error of law in concluding that [Plaintiff] was not eligible for benefits because Robert purportedly did not file a proper application."  (*Id.* at 13); *see also* (Dkt. 24 at 3–4 ("Since a person must file an application to receive benefits, this statutory subsection implicitly directs the agency to evaluate the spouse's claim as though the prisoner has already filed an application.").)

Defendant responds that the Appeals Council's interpretation comports with the statute and regulations, which "do[] not remove the eligibility or entitlement requirements for the prisoner's benefits."  (Dkt. 23 at 7.)  According to Defendant, "Plaintiff is reading into the provision that the agency would just assume all prisoners are entitled for whatever benefits" and that "[t]he regulation cannot be read out of context of the other provisions" that require the prisoner to be entitled to benefits

before awarding benefits to the prisoner's spouse.  (*Id.*)  Defendant has not directed the court to any other agency decisions or promulgations interpreting these provisions. *See* (Dkt. 23 at 5 (citing SSA Program Operations Manual (POMS) GN 00204.007.B, which discusses the requirement to file a valid application but says nothing about a spouse's eligibility for benefits on the record of her incarcerated wage-earner husband).)

The court's analysis of the Appeals Council's interpretation begins with the text of 42 U.S.C. § 402(x) and 20 C.F.R. § 404.468(a) to determine whether the language "has a plain and unambiguous meaning."  *Martin*, 903 F.3d at 1163.  Upon consideration, the court finds that these provisions are unambiguous, and the Appeals Council's interpretation comports with the plain meaning of the text.

Section 402(x) of Title 42 restricts benefit payments to incarcerated individuals and states that "no monthly benefits shall be paid under this section" for a month in which "such individual is confined in a jail, prison, or other penal institution or correctional facility pursuant to his conviction of a criminal offense[.]"  42 U.S.C. § 402(x)(1); *see Slakman v. Admin. Comm. of Delta Air Lines, Inc.*, 660 F. App'x 878, 880 (11th Cir. 2016) ("[T]he Social Security Act provides that Social Security benefits shall not be paid to a person while that person is incarcerated.") (citing 42 U.S.C. § 402(x)(1)(A)(i)).  As relevant to Plaintiff's claim, 42 U.S.C. § 402(x)(2) governs an individual's entitlement to spousal benefits based on the earnings record of an incarcerated wage earner.  Section 402(x)(2) states:

> Benefits which would be payable to any individual (other than a confined individual to whom benefits are not payable by reason of paragraph (1)) under this subchapter on the basis of the wages and self-employment income of such a confined individual but for the provisions of paragraph (1), shall be payable as though such confined individual were receiving such benefits under this section or section 423 of this title.

42 U.S.C. § 402(x)(2).  Pursuant to this section, the SSA also promulgated 20 C.F.R. § 404.468(a), which provides, in relevant part, that the restriction on benefit payments to a confined individual "applies only to the prisoner; benefit payments to any other person who is entitled on the basis of the prisoner's wages and self-employment income are payable as though the prisoner were receiving benefits."  20 C.F.R. § 404.468(a).

Plaintiff argues that the phrase "as though the prisoner were receiving benefits" requires the Appeals Council "to assume that Robert was eligible for benefits" and award Plaintiff spousal benefits because she satisfied the remaining eligibility criteria. (Dkt. 20 at 10–13.)  The court disagrees.  In analyzing the text of a statute or regulation, the court "do[es] not look at one word or term in isolation, but instead look[s] to the entire statutory text."  *Ga. State Conf. of the NAACP v. City of LaGrange, Ga.*, 940 F.3d 627, 631 (11th Cir. 2019) (quoting *United States v. DBB, Inc.*, 180 F.3d 1277, 1281 (11th Cir. 1999)).  Section 402(x)(2) provides that "[b]enefits *which would be payable* to any individual . . . under this subchapter on the basis of the wages and self-employment income of such a confined individual *but for the provisions of paragraph (1)*, shall be payable as though such confined individual were receiving such benefits[.]"  42 U.S.C. § 402(x)(2) (emphasis added).  Thus, the plain language of the text requires that to

- 11 -

receive benefit payments, a spouse must be eligible for spousal benefits *but for* the provisions of 42 U.S.C. § 402(x)(1), i.e. the prisoner's incarceration.  The applicable regulation similarly provides that "benefit payments to any other person *who is entitled* on the basis of the prisoner's wages and self-employment income are payable as though the prisoner were receiving benefits."  20 C.F.R. § 404.468(a) (emphasis added).  Both the statute and regulation therefore require that a spouse be entitled to benefits based on the prisoner's earnings record to receive benefits while the prisoner is incarcerated.

For a spouse to be entitled to spousal benefits, the wage earner must be entitled to benefits.  Section 402(b) of Title 42 governs spousal benefits, and provides that "[t]he wife . . . of an *individual entitled to old-age [] benefits*" may be entitled to a spousal insurance benefit if certain criteria are met, including that the wife has filed an application, has attained the age 62, and is not entitled to her own old-age or disability insurances benefits or her own benefits fall below a certain threshold.  42 U.S.C. § 402(b) (emphasis added); *see also* 20 C.F.R. § 404.330.  Pursuant to 42 U.S.C. § 402(a), an individual is entitled to old-age insurance benefits based on their own earnings record if the individual "(1) is a fully insured individual [as defined in 42 U.S.C. § 414(a)], (2) has attained age 62, and (3) *has filed application for old-age insurance benefits*[.]"  42 U.S.C. § 402(a); 20 C.F.R. § 404.310; *see also Cornelius v. Sullivan*, 936 F.2d 1143, 1146 (11th Cir. 1991) ("Section 202(a) of the Social Security Act, codified at 42 U.S.C. § 402(a), provides that an individual who has attained age 62, has properly filed for old-age insurance benefits, and is fully insured is entitled to retirement income benefits."); POMS GN 00204.001 ("A claimant . . . must file a valid application to

become entitled to benefits . . . .").  Thus, for a spouse to be entitled to spousal benefits pursuant to § 402(b), the wage-earner must also have filed a valid application and be entitled to benefits.  *See Miller v. Comm'r of Soc. Sec. Admin.*, 280 F. App'x 870, 872 (11th Cir. 2008) ("A claimant must file an application in order to be eligible for benefits.") (citing *Eagle v. Sullivan,* 877 F.2d 908, 909 n. 2 (11th Cir. 1989)).

Plaintiff asks the court to read into these provisions that they "implicitly direct[] the agency to evaluate the spouse's claim as though the prisoner has already filed an application." (Dkt. 24 at 4.)  But Plaintiff has cited no authority to support this implicit direction or that the drafters intended the provisions to be read in that manner.  (*Id.*; Dkt. 20 at 10–13.)  The court may not supply absent provisions to the statutory or regulatory text.  *Mamani v. Berzain*, 825 F.3d 1304, 1310 (11th Cir. 2016) (Discussing the canon of *casus omissus* and explaining that the court may not "add words to the law to produce what is thought to be a desirable result.  That is Congress's province.  We construe [the statute's] silence as exactly that: silence.") (quoting *EEOC v. Abercrombie & Fitch Stores, Inc.*, 575 U.S. 768, 774 (2015)); *see also Houston v. Marod Supermarkets, Inc.*, 733 F.3d 1323, 1334 (11th Cir. 2013) ("This absence of legislative language restricts our interpretation, as we are 'not allowed to add or subtract words from a statute.'") (quoting *Friends of the Everglades v. S. Fla. Water Mgmt. Dist.*, 570 F.3d 1210, 1224 (11th Cir. 2009)).

Accordingly, pursuant to the plain language of 42 U.S.C. § 402(x) and 20 C.F.R. § 404.468(a), benefit payments to a spouse, such as Plaintiff, "would be payable" to the spouse only if the wage earner, Plaintiff's husband, is entitled to benefits and has

- 13 -

filed a valid application.  This is precisely the interpretation advanced by the Appeals Council and offered by the SSA at each stage of Plaintiff's claim, including by the ALJ in the fully favorable decision.  *See* (Tr. 6–7 (citing 20 C.F.R. §§ 404.310, 404.311, 404.312, 404.603, 404.610, 404.611, 404.612, 404.614); Tr. 30 ("Social Security policy is that a current spouse cannot receive benefits on the account of her wage earner husband unless and until the husband files for Title II benefits on his account[.]"); Tr. 93 ("You can not get spouse's benefits until Robert A. Stanford files for retirement benefits."); Tr. 99 ("Since your husband is not currently entitled to either retirement or disability benefits from Social Security, you are not entitled to wife's benefits on his record").)  The court sees no ambiguity in either the statutory or regulatory provisions that would permit the SSA, as Plaintiff urges, to award benefits to the spouse of a prisoner that was not entitled to benefits on his own record.  The Appeals Council's interpretation adheres to the unambiguous text and Plaintiff is therefore not entitled to remand on this basis.  *See Ga. State Conf. of the NAACP*, 940 F.3d at 631 ("where the language of the statute is unambiguous, we need look no further and our inquiry ends"); *Lewis*, 285 F.3d at 1332 ("No reason exists in this case to look beyond the plain terms of the statute."); *Kisor*, 139 S. Ct. at 2414 ("the possibility of deference can arise only if a regulation is genuinely ambiguous").

### B.  Substantial Evidence

Plaintiff next argues that the Appeals Council's finding that Mr. Stanford had not filed a valid application for benefits is not supported by substantial evidence.  (Dkt. 20 at 14–16; Dkt. 24 at 5–6.)  Plaintiff contends that the Appeals Council's decision

relies primarily on the Assistant Regional Commissioner's Memorandum challenging the ALJ's decision (Tr. 130–31) and the record does not include any evidence supporting the Memorandum's conclusions, such as evidence showing that the SSA ever attempted to verify Mr. Stanford's applications.  (Dkt. 20 at 14–15.)  Plaintiff further argues that the Appeals Council's decision ignores favorable evidence in the record indicating that Mr. Stanford filed valid applications for benefits, such as records reflecting January 2018, February 2018, August 2018, and May 2020 applications and a statement from Mr. Stanford in November 2021 that Plaintiff properly resubmitted an application for Mr. Stanford in April 2021.[1]  (Dkt. 20 at 14–16 (citing Tr. 75–76, 142–45, 148–51, 169).)  Defendant responds that the Appeals Council's decision is supported by substantial evidence through the Assistant Regional Commissioner's Memorandum, which states that the SSA was unable to verify that Mr. Stanford's attempted applications were valid, and the agency had not determined that Mr. Stanford was eligible for benefits on his own record.  (Dkt. 23 at 8.)

In reviewing the Appeals Council's decision, the court cannot "decid[e] the facts anew, make credibility determinations, or re-weigh[] the evidence."  *Shue v. Comm'r of Soc. Sec.*, 817 F. App'x 906, 908 (11th Cir. 2020) (quoting *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005)).  The Appeals Council's decision must be affirmed if it is

---

[1] Defendant stated in her response that Mr. Stanford "did eventually have an appointment on August 4, 2021 to confirm [this] April 2021 application, which the agency determined could relate back to October 2020[.]"  (Dkt. 23 at 3 n.1.)  Plaintiff was thereafter awarded spousal benefits retroactive to October 2020 based on Mr. Stanford's entitlement.  (*Id.*)  Plaintiff acknowledged the SSA's finding in her reply (Dkt. 24 at 2) and both parties agree that the case remains at issue only as to the Appeals Council's decision to deny Plaintiff's benefits for the period of June 2018 through October 2020 (*id.*; Dkt. 23 at 3 n.1).

supported by substantial evidence on the record as a whole.  *Parker*, 788 F.2d at 1522;

*see also Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004).  Upon

consideration, the court finds that the Appeals Council's decision is not supported by

substantial evidence on the record as a whole and must be remanded for further

development of the record.

In its decision, the Appeals Council acknowledged the ALJ's finding that Mr.

Stanford had completed applications in "February 2018, May 2018, May 2020, and

September 2020 and resubmitted [an application] in April 2021," and that Mr.

Stanford had "started online applications for retirement insurance benefits on his own

record[.]" (Tr. 5–6.)  However, the Appeals Council concluded based on the Assistant

Regional Commissioner's Memorandum that the SSA had "not determined that [Mr.

Stanford] filed a valid application, nor has it awarded him entitlement to retirement

insurance benefits on his own record."  (Tr. 6.)  As Plaintiff notes, the Appeals

Council's decision relies primarily on the Assistant Regional Commissioner's

Memorandum, which states in relevant part that:

> [i]t is noted that prior applications were attempted on behalf of the wage
> earner, however there is no indication that these applications were
> completed by a proper applicant.  Protected filing dates were established
> on January 1, 2018, March 5, 2018 August 8, 2018, and May 18, 2020.
> All claims were identified as possible anomalous filings and the required
> development was completed.  The Agency was unable to verify that the
> wage earner had indeed filed the applications.  All claims for the wage
> earner were then abated with no decision made per instructions in EM-
> 17016 and related POMS. . . . While it may be possible to entitle the legal
> spouse at some future time after the wage earner has made valid
> application and been awarded entitlement, we cannot fabricate a
> fictitious application for the wage earner in order to provide entitlement

to the spouse.  We have no way to effectuate [the ALJ's] decision as it is
written.

(Tr. 131–32.)  But the record contains no evidence beyond the Assistant Regional
Commissioner's conclusions to support the Memorandum's assertions.  Courts have
held in different circumstances that agency statements in letters or memoranda without
additional proof are insufficient to establish substantial evidence to support the
Commissioner's conclusions.  *See, e.g., Mackey v. Astrue*, No. 3:08-cv-1019-J-TEM,
2010 WL 3833659, at *7–8 (M.D. Fla. Sept. 28, 2010) ("When a claimant challenges
the SSA's initial determination of the amount of an overpayment, the Commissioner
must present reliable substantial evidence of the particular overpayments. . . . The
production of an initial determination letter is not sufficient for that purpose.") (citing
*McCarthy v. Apfel*, 221 F.3d 1119, 1126 (9th Cir. 2000)).

Defendant states, without citation to authority, that "[o]ften with online
applications, the agency marks those as needing additional authentication and needing
additional information from the applicant."  (Dkt. 23 at 6.)  However, the Appeals
Council does not identify any discrepancies in Mr. Stanford's applications that would
warrant the SSA's rejection of them.[2]  *See Watkins v. Comm'r of Soc. Sec.*, 457 F. App'x
868, 872 (11th Cir. 2012) ("[The court] cannot affirm based on a post hoc rationale
that 'might have supported the ALJ's conclusion.'") (quoting *Owens v. Heckler*, 748

---

[2] Upon review of the purported applications, the court notes various addresses are provided for Mr.
Stanford, and that each purported application contains a statement from Mr. Stanford that he "never
married or [he] had no previous marriages that lasted 10 years or more or ended in death" and
affirming that all information given in the application is true.  *See* (Tr. 142–43, 144–45, 148–49, 150–
51.)

F.2d 1511, 1516 (11th Cir. 1984)).   Further, each of Mr. Stanford's purported applications state that on specific dates, a representative from the SSA "talked with [Mr. Stanford] and completed [his] application for Social Security Benefits."   *See* (Tr. 142, 144, 148, 150.)   Neither Defendant nor the Appeals Council relying on the Assistant Regional Commissioner's Memorandum provide any support or explanation for the Appeals Council's conclusion that Mr. Stanford had not filed a valid application.   Accordingly, the court finds that the Appeals Council's finding that Mr. Stanford had not filed a valid application is not supported by substantial evidence in the record as a whole and must be remanded for further development.

## CONCLUSION

Accordingly, after due consideration and for the foregoing reasons:

1.   The decision of the Commissioner is **REMANDED** pursuant to sentence four of 42 U.S.C. § 405(g) to the Commissioner for further proceedings consistent with this order.

2.   The Clerk of Court is directed to enter final judgment accordingly, terminate any pending motions and deadlines, and close the case.

**ORDERED** in Tampa, Florida, on August 3, 2023.

_____
JULIE S. SNEED
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:
Counsel of Record